STOKER, Judge,
concurring.
I fully concur with the expressions contained in the majority opinion. I add a few additional observations which I feel worthy of note.
The plaintiff-appellant lost his driving privileges as a result of a court-conducted inquiry under LSA-R.S. 32:1471, et seq. which is entitled “MOTOR VEHICLE HABITUAL OFFENDER LAW.” The declaration of policy contained in Section 1471 of the statute reads as follows:
“It is hereby declared to be the policy of this state:
(1) To provide maximum safety for all persons who travel or otherwise use the public highways of this state; and
(2) To deny the privilege of operating motor vehicles on such highways to persons who by their conduct and record have demonstrated their indifference to the safety and welfare of others and their disrespect for the laws of this state, the orders of its courts, and the statutorily required acts of its administrative agencies; and
(3) To discourage repetition of criminal acts by individuals against the peace and dignity of this state and her political subdivisions and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual offenders who have been convicted repeatedly of violations of the traffic laws.”
Marcus Hall was adjudicated an habitual offender on September 17,1980, under R.S. 32:1472, and was required to surrender his driver’s license pursuant to R.S. 32:1477(A). The law at the time of that proceeding empowered the court to revoke driving privileges. Legislative amendment in 1982 placed the responsibility with the Department of Public Safety (DPS). La.Acts 1982, No. 555, Sec. 1. Under neither the old provisions nor the amendments were the responsible bodies given the authority to specify the period of suspension. Their only function was to make the determination to suspend, based on the criteria in Section 1472.
Restoration of driving privileges to an habitual offender is governed by LSA-R.S. 32:1479. The provisions of this section should not have been involved in the 1980 adjudication. They are expressions by the Legislature that at some point, the licensing of an habitual offender is no longer in contravention of the policy declared in Section 1471. The suspension of a driver’s license under this chapter is not intended as a punishment of the driver; it is a method of protecting the safety of persons using public thoroughfares. The Legislature has determined that once the habitual offender has met the requirements of Section 1479, there is no longer any reason to deny him driving privileges.
It appears from the judgment issued in plaintiff-appellant’s case dated September 17, 1980, that he was not only adjudged an habitual offender within the meaning of LSA-R.S. 32:1472, but the judgment provided that “he is prohibited from operating a motor vehicle on the public highways of the State of Louisiana for a period of five years beginning September 16, 1980.” Thus, the judgment stated a positive prohibition although the statute did not call for a judgment in such form and, on the con *544 trary, contained a specific separate provision in the statute (Section 1479) providing a minimum time before which the habitual offender could not apply for reissuance of a driver’s license. Before 1982, that period was five years. It was shortened by La. Acts 1982, No. 555, to three years. Nevertheless, the DPS claims that Marcus Hall should be bound by the term provided in the 1980 judgment. To apply the new law, the DPS argues, would give the amendment improper retroactive effect.
I am of the opinion that it was never intended by the Legislature that judgments (now simply orders of the Department) revoking licenses should contain provisions which in themselves fixed a period during which the revocation should last. When the Legislature in 1982 changed the period for seeking restoration of driving privileges from five years to three years, it thereby indicated that the waiting period was a policy matter over which the Legislature intended to exercise control. Viewed in this light, I am of the opinion that questions of retroactivity are not relevant to the issue in this case. The statute is not penal in nature and has been held to be civil in nature. State v. Woodard, 387 So.2d 1066 (La.1980); State v. Hill, 383 So.2d 67 (La. App. 3d Cir.1980); State v. Wilson, 354 So.2d 1077 (La.App. 2d Cir.1978), and State v. Skyeagle, 345 So.2d 189 (La.App. 3d Cir.1977). No issues of ex post facto law or vested rights arise. In fact, if in 1982 the Legislature had increased the waiting period, say to six or seven years, plaintiff-appellant could not have complained. He would have had to adhere to the law and would have had to wait out the prescribed period.
I think the logic of the analysis given above is supported if one recalls the policy declaration with which the statute opens, considers the fact that the statute is civil in nature, and recognizes that the Legislature is free to set policies for driving on the State’s highways.
The trial court in this case remarked in its reasons for judgment that its judgment of September 17, 1980 was a final judgment. This of course is true. However, as noted above, it is my opinion that the positive prohibition provision probably went beyond what was legislatively authorized. Accordingly, under our broad power contained in LSA-C.C.P. 2164, I would not hesitate under the circumstances to consider this particular provision of the judgment as purely ministerial in force and a provision which we may ignore.
In short, the Legislature fixes the period of time that must pass before driving privileges may be restored, and not the tribunal (judicial or administrative) which revokes the license in the first instance.